

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L

2005 JUN 27 AM 8: 34

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAGILLE DUPLESSIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0591** |
| **N. BURL CAIN, LA. STATE PRISON** | **SECTION "S" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No_____

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Ragille Duplessis, is incarcerated in the Louisiana State

Penitentiary in Angola, Louisiana.[2]  On July 21, 1997, Duplessis was charged by bill of

information in Orleans Parish with four counts of armed robbery.[3]  The Louisiana Fourth

Circuit Court of Appeal summarized the facts of the case as follows:

> Detective Ronald Livingston testified that he investigated armed robberies that took place on 21 and 29 May 1997 in the Second District. He compiled a photographic lineup which included a photograph of defendant and showed it to the robbery victims. He stated that victims, Paul Weidenfeld and Haydee Denis, chose defendant's picture and that victim, John Fisher, was unable to make a positive identification. Detective Livingston also obtained a search warrant for defendant's residence at 7471 Pitt Street which he executed along with other officers. On cross-examination, Livingston admitted that none of the wallets, purses, or other seized items belonged to any of the victims. He also admitted that none of the clothing taken from defendant's house matched the descriptions of the robber's clothing given by the victims.
>
> Weidenfeld testified that, at about 6:00 p.m. on 21 May 1997, he parked his car in the driveway of his home and was approached by a man with a gun. The man demanded money and Weidenfeld gave him his wallet. The man left. Weidenfeld identified the defendant in a photographic line-up on 4 June 1997 but testified that he was "not real sure" of his identification. Neither his wallet nor the clothing he described as being worn by his assailant was ever recovered.
>
> Fisher testified that around dusk on 29 May 1997, he and his girlfriend were walking on Pearl Street near Lowerline Street when he saw a man with a gun. The man demanded money, and Fisher gave him his wallet and checkbook. Fisher testified that the man became very belligerent when he discovered that Fisher had no money. Fisher pulled up his shirt to show that he had nothing else, and the man

---

[2]Rec. Doc. No. 2, Petition.

[3]St. Rec. Vol. 1 of 4, Bill of Information (page 1 of 2), 7/21/97; Bill of Information (page 2 of 2), 7/21/97.

grabbed Fisher's girlfriend and started dragging her away. Fisher testified that he then realized he was wearing a watch and gave that to the robber. The robber took the watch, and Fisher told his girlfriend to give the man her watch, which she did. Fisher stated that the man seemed satisfied and then ordered them to lie on the ground. Although he did not choose defendant's picture out of the photographic lineup, he identified defendant in court as the person who robbed him and his girlfriend.

Denis testified that she and Fisher were on Pearl Street walking home from dinner at around 8:30 p.m. on 29 May 1997, when she saw defendant on Lowerline Street. She said that he was staring at her and Fisher and that he kept putting his hand in his waistband. She stated that he started walking slowly toward them and that Fisher told him to pass. Denis testified that defendant pulled out a gun, held it to Fisher's head, and demanded money. She further testified that she tried to tell him that they had no money and that Fisher lifted up his shirt to show that he had nothing. She said the defendant kept demanding money and that he put his gun to Fisher's head and cocked it. He threatened to kill Fisher if she did not give him her money and that Fisher then offered defendant his watch and that she also gave her watch to the defendant. Denis testified that when a car passed by, she raised up her arms to signal for help; she said that defendant ordered her to shut up. The car did not stop. Defendant grabbed her by her top, pulled her toward him, and told her to come on. She said that she resisted and that defendant then ordered her and Fisher to lie face down on the ground. She stated that defendant left and that she and Fisher went to a nearby house for help. The police arrived and took them to Fisher's house. Denis testified that some time later, a police officer came to Fisher's house to inform them that someone had been arrested and asked them to make an identification. They went to the location at which the suspect was being held, but Denis said that the suspect was not the person who had robbed them.

Dionne Duplessis testified that she was defendant's mother and that in May 1997, defendant was seventeen years old. She further testified that her home was in shambles after the search by the police. She identified a purse as hers and a wallet as having belonged to defendant's late father. She stated that she had never seen her son with a gun.

Deshawn Williams testified that on 29 May 1997, he, defendant, defendant's brother, and defendant's girlfriend were at Chuck E. Cheese's Restaurant at a party for her son. She stated that the party was on the Westbank and that it lasted from 6:30 to 8:30 p.m. She further stated that they left about 8:45 p.m., went home, and that defendant left at around 10:00 or 10:30 p.m.

Eugenie Scott testified that on 1 June 1997, she was working as the cashier at Popeye's Restaurant at 1414 South Carrollton Avenue when a robbery occurred. She stated that a man in a hooded shirt ordered a drink. When she opened the register, he grabbed the money. She grabbed his hand, and he pulled out a gun. He took the money and left. She described the robber as shorter than she. She testified that when she was shown three photographic lineups by Detective Livingston, she picked someone from the first lineup, picked no one from the second lineup, and

flinched at a picture in the third lineup. She testified that she asked if the person in the picture had gold teeth and was told that he did. She further testified that she was told that this person had committed other armed robberies in the area and was asked if he was the one who robbed her store. She stated that after she said she could not remember, she was told to sign defendant's picture. She testified that defendant was not the person who robbed the store. She testified that she knew defendant's girlfriend who came to her place of work to talk to her. Scott stated that the girlfriend showed her a picture and asked her if any of the boys in the picture robbed her store. She further stated that she told the girlfriend, "No," and that the girlfriend said that her boyfriend was under arrest for robbing the store. Scott stated that she told the girlfriend that if the boyfriend was in that picture, then he did not rob the store. She denied that anyone from the defendant's family asked her not to testify against defendant.

(footnote omitted). State Record Volume 1 of 4, Fourth Circuit Opinion, 2000-KA-0052, pages 2-5, March 21, 2001; State v. Duplessis, 793 So.2d 571 (La. App. 5th Cir. 2001) (Table).

Duplessis was tried before a jury on counts one, two and three on November 10, 1998.[4] He was found not guilty as to the first count and guilty as to the second and third counts.[5] At the sentencing hearing held December 4, 1998, Duplessis's counsel filed a motion for new trial which was denied.[6] That day the state trial court sentenced

---

[4]St. Rec. Vol. 2 of 4, Trial Minutes, 11/10/98; St. Rec. Vol. 1 of 4, Trial Transcript, 11/10/98.

[5]Id.; St. Rec. Vol. 1 of 4, Verdict Form (Count One), 11/10/98; Verdict Form (Count Two), 11/10/98; Verdict Form (Count Three), 11/10/98; Extracts from the Minutes of the Court, 11/10/98.

[6]St. Rec. Vol. 2 of 4, Sentencing Minutes, 12/4/98; St. Rec. Vol. 1 of 4, Sentencing Transcript, 12/4/98; Motion for New Trial, 12/4/98.

Duplessis to serve ten years imprisonment on each count.[7]  The State also filed a multiple bill.[8]

Duplessis was resentenced as a multiple offender on January 19, 1999, to serve 49½ years on each count.[9]  The State also entered a nolle prosequi as to Count Four of the original bill of information.[10]

Almost five months later, on June 8, 1999, Duplessis sent a letter to the Louisiana Fourth Circuit, which was filed by the court as a writ application, inquiring about his appellate rights.[11]  On June 30, 1999, the court granted the writ for purposes of transferring it to the trial court for the granting of an out-of-time appeal.[12]

On July 6, 1999, the state trial court issued a minute entry in which it acknowledged the directive from the Louisiana Fourth Circuit and indicated that it

---

[7]St. Rec. Vol. 2 of 4, Sentencing Minutes, 12/4/98; St. Rec. Vol. 1 of 4, Sentencing Transcript, 12/4/98.

[8]St. Rec. Vol. 1 of 4, Multiple Bill, 12/4/98.

[9]St. Rec. Vol. 2 of 4, Multiple Bill Hearing Minutes, 1/19/99; St. Rec. Vol. 1 of 4, Multiple Bill Hearing Transcript, 1/19/99.

[10]Id.; St. Rec. Vol. 1 of 4, Bill of Information (page 2 of 2), 7/21/97; Extract from the Minutes of the Court, 1/19/99.

[11]St. Rec. Vol. 1 of 4, 4th Cir. Writ Application, 99-K-1443, 6/8/99.

[12]St. Rec. Vol. 1 of 4, 4th Cir. Order, 99-K-1443, 6/30/99.

recalled granting a motion for appeal at the sentencing on January 19, 1999, but that, because of clerical error, the record failed to reflect the order.[13]

On August 9, 1999, the state trial court denied an application for post-conviction relief filed by Duplessis on the grounds that he was being denied his right to appeal.[14] The court denied the application because the out of time appeal was granted and counsel was appointed.[15]

In the out-of-time appeal, Duplessis's counsel raised four grounds for relief:[16] (1) There was insufficient evidence to support the verdict. (2) The trial court erred in denying certain objections during closing argument. (3) The trial court erred in sentencing him as a multiple offender on each count. (4) The sentences were excessive. (5) He received ineffective assistance of counsel when his lawyer failed to move to quash the multiple bill and to move for reconsideration of the sentence.

---

[13]St. Rec. Vol. 2 of 4, Minute Entry, 7/6/99; St. Rec. Vol. 1 of 4, Letter from Counsel, 1/20/99; Letter from La. Appellate Project, 6/1/99.

[14]St. Rec. Vol. 1 of 4, Uniform Application for Post Conviction Relief (not file stamped); Trial Court Order, 8/9/99.

[15]Id.

[16]St. Rec. Vol. 1 of 4, Appeal Brief, 2000-KA-0052, 6/26/00.

The Louisiana Fourth Circuit affirmed the conviction on March 21, 2001, but found that the trial court erred in sentencing Duplessis as a multiple offender on both counts.[17] The court vacated the sentences and remanded the case for resentencing.

In compliance with the remand, the state trial court sentenced Duplessis on April 12, 2001, to serve 49½ years as a multiple offender on count two and to serve a concurrent term of 49½ years as to count three.[18] The sentences were ordered to be served without benefit of parole, probation or suspension of sentence. Duplessis did not seek further appellate review of this sentence.

Fifteen months later, in February 2003, Duplessis submitted an application for post-conviction relief to the state trial court, alleging that he was illegally arrested, his counsel was ineffective, and the conviction was based on misidentification.[19] In March 2003, Duplessis filed a pleading in the trial court requesting leave to supplement the first application for post-conviction relief to allege that the State withheld a supplemental police report from the defense.[20] The state court record provided by the State[21] contains

---

[17]St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2000-KA-0052, 3/21/01; State v. Duplessis, 793 So.2d at 571.

[18]Rec. Doc. No. 6, Attachment, Criminal District Court Docket Master, page 3, Docket Entry 4/12/01.

[19]St. Rec. Vol. 3 of 4, Application for Post-Conviction Relief, February 2003.

[20]St. Rec. Vol. 4 of 4, Supplemental Application for Post-Conviction Relief, March 2003.

[21]The State indicates in its response that the actual trial court record is missing and could not be produced. Rec. Doc. No. 6, p. 2.

what appears to be a copy of the first application as an exhibit to one of Duplessis's subsequent writ applications to the Louisiana Supreme Court. The record also contains what appears to be a copy of the supplemental application as an exhibit to one of Duplessis's subsequent writ applications to the Louisiana Fourth Circuit. Neither copy bears a file stamp nor is Duplessis's signature dated. The certificate of service on the first application indicates, however, that it was to be signed in February 2003. The second certificate indicates that it was to be signed in March 2003. For this reason, I will consider the filings to have been made respectively in February and March, 2003.

The state trial court denied the February 2003 application as meritless on March 13, 2003.[22] Duplessis thereafter filed an untimely[23] writ application in the Louisiana Fourth Circuit on April 17, 2003 seeking review of that ruling.[24] The appellate court denied the application on May 22, 2003, finding no error in the trial court's ruling.[25]

Duplessis also filed an untimely[26] writ application with the Louisiana Supreme Court raising the same three claims, that he was illegally arrested, ineffective assistance

---

[22]St. Rec. Vol. 2 of 4, Trial Court Judgment, 3/13/03.

[23]The application was filed more than 30 days after the trial court's ruling, the period set forth in La. App. Rule 4-3.

[24]St. Rec. Vol. 2 of 4, 4th Cir. Writ Application, 2003-K-0716, 4/17/03.

[25]St. Rec. Vol. 2 of 4, 4th Cir. Order, 2003-K-0716, 4/17/03.

[26]The application was filed more that 30 days after the appellate court's ruling, the period set forth in La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

of counsel and misidentification.[27] The Louisiana Supreme Court denied the application without reasons on June 25, 2004.[28]

In the meantime, the state trial court construed the March 2003 supplemental application as a separate application for post-conviction relief, alleging that the State withheld the supplemental police report.  The trial court denied the application as meritless on June 18, 2003.[29]

Duplessis filed another untimely[30] writ application in the Louisiana Fourth Circuit on July 17, 2003, seeking review of the trial court's June 18, 2003 order.[31] The appellate court denied the application on August 14, 2003 finding no error in the trial court's ruling.[32]

On September 24, 2003, Duplessis filed another untimely[33] writ application with the Louisiana Supreme Court, alleging that the State failed to disclose the supplemental

---

[27]St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 03-KH-1898, 7/7/03.

[28]State ex rel. Duplessis v. State, 876 So.2d 821 (La. 2004); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 03-KH-1898, 7/7/03.

[29]St. Rec. Vol. 4 of 4, Trial Court Judgment, 6/18/03.

[30]La. App. Rule 4-3.

[31]The record does not contain a copy of this writ application. The filing date was obtained by my staff from the office of the Clerk of the Louisiana Fourth Circuit.

[32]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2003-K-1265, 8/14/03.

[33]La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

police report and that this newly discovered evidence contained exculpatory evidence.[34]
The Louisiana Supreme Court denied the application without reasons on October 15,
2004.[35]

## II.   FEDERAL HABEAS PETITION

On February 17, 2005, Duplessis filed a petition for federal habeas corpus relief
alleging that the State withheld the supplemental police report which contained
exculpatory evidence.[36]

In its response, the State concedes that Duplessis has exhausted his state court
remedies but argues that Duplessis's federal petition is <u>not</u> timely filed.[37]

Duplessis responded to the State's opposition, alleging under a broad reading that
his petition should be considered timely because he was required to exhaust state court
remedies and had to wait to complete that process before filing for federal relief.[38]

## III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.
No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[34]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 2003-KH-2675, 9/24/03.

[35]State ex rel. Duplessis v. State, 883 So.2d 1050 (La. 2004); St. Rec. Vol. 4 of 4, La. S. Ct.
Order, 2003-KH-2675, 10/15/04.

[36]Rec. Doc. No. 2, Petition, Memorandum in Support, p. 6.

[37]Rec. Doc. No. 6.

[38]Rec. Doc. Nos. 7,8.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[39] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Duplessis petition, which, for reasons discussed below, is deemed filed in this court on January 19, 2005.[40]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[39]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[40]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Duplessis's petition on February 17, 2005, the date on which the filing fee was paid. Duplessis did not date his signature on the petition. However, Duplessis signed the memorandum in support, which was submitted with the petition, on January 19, 2005. This is the earliest date he could have submitted it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

In the instant case, the State concedes that Duplessis has exhausted available state court remedies, but argues that his petition is <u>not</u> timely filed. After review of the pleadings and the state court record, I find that Duplessis has exhausted his state court remedies, but that the petition is <u>not</u> timely filed under the AEDPA and must be dismissed with prejudice for that reason.

IV. <u>STATUTE OF LIMITATIONS</u>

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[41] The court must therefore determine when

---

[41]Specifically, Section 2244(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Duplessis's conviction became final to determine the triggering date for calculating the timeliness of this federal petition.

In its response, the State contends without discussion that Duplessis's conviction became final at the conclusion of his out-of-time appeal. For the following reasons, I find that this conclusion is contrary to federal law.

As outlined above, Duplessis was first sentenced as a multiple offender on January 19, 1999. Ordinarily, his conviction would become final five days later, on January 24, 1999, or the first business day thereafter, January 25, 1999, when he did not appeal or file for reconsideration of his sentence. Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five day deadline for filing a notice of appeal under La. Code Crim. P. art. 914[42]). However, in the instant case, Duplessis was granted and received an out-of-time appeal more than five months after his conviction would otherwise be considered final under the AEDPA. The question before the court, therefore, is whether the out-of-time appeal had an impact on the commencement of the AEDPA's limitation period.

---

[42]At the time of Duplessis's conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal. Because the amendment occurred well after Duplessis's sentencing, it is inapplicable to this case.

In <u>Salinas v. Dretke</u>, 354 F.3d 425 (5th Cir. 2004), <u>cert. denied</u>, 541 U.S. 1032 (2004), the United States Fifth Circuit Court of Appeals addressed the question of whether an out-of-time petition for appellate review was still within "direct review" such that it restarts the finality of the state conviction at issue for AEDPA limitation purposes. <u>Id.</u>, at 429. The Fifth Circuit held that it does <u>not</u>.

In so finding, the <u>Salinas</u> court acknowledged that the granting of a petition for out-of-time appellate review by the Texas state courts restored the petitioner to the position he was in when he first possessed the right to direct review <u>under state law</u>. <u>Id.</u> at 429; <u>Cockerham v. Cain</u>, 283 F.3d 657 (5th Cir. 2002) (same, under Louisiana law). The court determined, however, that the granting of out-of-time review did <u>not</u> affect finality <u>under federal law</u>.

The Fifth Circuit considered the fact that, under Texas law, in order to obtain out-of-time review, a petitioner must make his request through the collateral review process. This, the court concluded, took the petitioner out of the "direct review" process and entitled him to nothing more than tolling of the federal limitations period. <u>Id.</u> at 430.

Thus, for purposes of <u>federal law</u>, the Fifth Circuit held that the granting of a request for out-of-time review "<u>tolls</u> AEDPA's statute of limitations . . . but it does not require a federal court to restart the running of AEDPA's limitations period altogether." <u>Id.</u> at 430 (footnote omitted) (emphasis added); <u>see also, McGee v. Cain</u>, 104 Fed. Appx.

989, 991-992 (5th Cir. 2004) (applying <u>Salinas</u> rationale to Louisiana out-of-time writ application).  The Fifth Circuit held that, for limitations purposes, Salinas's conviction was final when the direct review process ended and it remained so.  <u>Id</u>.  The <u>Salinas</u> court further resolved that the fact that the petitioner was eventually granted an out-of-time appeal due to ineffective assistance of counsel (i.e., counsel failed to lodge the appeal timely) did <u>not</u> restart the federal limitations period, nor did attorney error or neglect constitute a basis for equitable tolling.  <u>Salinas</u>, 354 F.2d at 432 (quoting <u>Cousin</u>, 310 F.3d at 848).

Under Louisiana law, as in Texas, to obtain an out-of-time appeal, a petitioner must file an application for post-conviction relief.  <u>McGee</u>, 104 Fed. Appx. at 991 (citing <u>State v. Counterman</u>, 475 So.2d at 339).  Thus, the United State Fifth Circuit Court of Appeals has resolved that the analysis in <u>Salinas</u> applies to Louisiana convictions, leaving the conviction final for purposes of commencement of the AEDPA limitations period at the conclusion of the original period for seeking direct review.  <u>Id</u>.

In the instant case, Duplessis, like the petitioners in <u>Salinas</u> and <u>McGee</u>, was granted his out-of-time appeal through a collateral post-conviction request made to the state trial court.  The out-of-time appeal process affords Duplessis <u>tolling</u> of the AEDPA's limitations period.  However, the out-of-time appeal did <u>not</u> restart or revive

15

the finality of Duplessis's conviction for purposes of calculating the commencement date for AEDPA's one-year limitations period.

Therefore, the suggestion by the State that Duplessis's conviction became final at the conclusion of his out-of-time appeal is legally erroneous. Pursuant to the holding in Salinas, as applied to Louisiana law in McGee, Duplessis's conviction became final on January 24, 1999, five days after he was resentenced as a multiple offender and failed timely to appeal, or no later than January 25, 1999, which for ease of reference and affording Duplessis every benefit, will be the date used for purposes of the limitations discussion herein. See Cousin, 310 F.3d at 845 (conviction becomes final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914) and discussion at footnote 42 infra.

Thus, literal application of the statute would bar Duplessis Section 2254 petition as of January 25, 1998. Under the federal mailbox rule, his federal petition is deemed filed on January 19, 2005, seven years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the

16

petitioner has pursued his rights diligently and rare or extraordinary circumstances prevented timely filing. Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 125 S. Ct. at 1814-15; Cousin, 310 F.3d at 848.

Duplessis has not asserted any reason that might constitute exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at

808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan v. Walker</u>, 533 U.S. 167, 175-178 (2001). Duplessis's contention in his reply memorandum to the contrary is without legal basis.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the

one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas

19

petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").

Finally, the phrase "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, for the reasons discussed above, the one-year limitations period began to run in Duplessis's case on January 26, 1999, the day after his conviction is deemed final. The limitations period ran uninterrupted for 134 days, until June 8, 1999, when Duplessis filed a writ application with the Louisiana Fourth Circuit seeking an out-of-time appeal. The limitations period remained tolled until May 12, 2001, which was 30 days after the resentencing on April 12, 2001, when no further appellate review was available. <u>Williams</u>, 217 F.3d at 310; La. App. Rule 4-3.

The limitations period began to run the next day, May 13, 2001 and did so uninterrupted for the remaining 231 days when it expired on December 29, 2001, or the

first business day thereafter, December 31, 2001. Duplessis had <u>no</u> other properly filed state post-conviction or other collateral review proceedings pending during that period.

In fact, Duplessis did not seek further post-conviction review in the state courts for more than 13 months thereafter, when he filed an application for post-conviction relief in the state trial court in February 2003. Clearly, the AEDPA limitations period expired during this 13-month period during which Duplessis had nothing of any kind pending in state court. Duplessis is entitled to no tolling consideration or rejuvenation of his federal habeas corpus remedy for the subsequent post-conviction filings made after expiration of the AEDPA statute of limitations. <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000).

In the alternative, even if the court were to consider Duplessis's conviction to be final <u>after</u> the out-of-time appeal, the petition is still untimely. Even under this liberal alternative calculation, the conviction would have become final at the latest on May 12, 2001, which was 30 days after his resentencing, when Duplessis sought no further appellate review. He would have had to file for federal habeas corpus relief within one year from that date, or by May 12, 2002. His federal petition is deemed filed on January 19, 2005, which is more than two and one-half years later. As noted above, he also had no state post-conviction or other collateral review pending in the state courts until

February 2003, nine months after this alternative limitations period ended.  His petition would still be untimely.

Duplessis's federal petition is deemed filed at the earliest on January 19, 2005, which is more than three years after the AEDPA statute of limitations period expired. Thus, Duplessis's petition must be dismissed with prejudice as time-barred under the statute of limitations provided in 28 U.S.C. § 2244(d)(1)(A).

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the petition of Ragille Duplessis for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___24th___ day of June, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

23